## FIDELITY BOND INVALIDATED BY FALSE REPRESENTATION.

Circuit Court of Cuyahoga County.

J. B. LIVINGSTON ET AL V. THE FIDELITY & DEPOSIT CO.[*]

Decided, June 11, 1906.

*Fidelity Bonds—False Representation of the President of a Corporation as to Performance of Duties by Employees Will Invalidate it.*

When a fidelity bond states that it is a condition that the obligee's business shall continue to be conducted and the duties and remuneration of the employees remain in accordance with the statements in the application, and the bond of the secretary of a corporation is renewed upon the certificate of the president that each of the employees named in an accompanying list had faithfully and satisfactorily performed his duties and promptly and correctly rendered his accounts during the year preceding, where as a matter of fact all the other officers had delegated their duties to the secretary, thus enabling him to conduct the business of the company in violation of law and the by-laws of the company, and cover up his defalcations, such renewal bond is secured upon false representations and is invalid.

*Smith, Taft & Arter,* for plaintiffs in error.
*Hoyt, Dustin & Kelley,* contra.

[*]Affirmed, *Livingston et al* v. *Fidelity & Deposit Co.,* 76 Ohio State, 253.

HENRY, J.; WINCH, J., and LAUBIE, J. (sitting in place of Marvin, J.), concur.

This case came before this court on error on a former occasion and our decision then is reported in 27 C. C., 662, where the facts are set forth very fully. The cause was remanded for further proceedings; new pleadings were filed, and upon the trial which ensued the court directed a verdict for the defendant at the close of the plaintiff's evidence. After judgment the plaintiffs below filed their petition in error here with a bill of exceptions exhibiting all the evidence.

Without stating the facts it will suffice to say that the blanket surety bond on a renewal of which this suit was brought, provides that the statements made in the applications for said bond and renewals thereof "shall constitute a part of the basis and the consideration of the contract." Also that the contract is entered into on the condition that the obligee's business "shall be continued to be conducted and the duties and remuneration of the employees shall remain in accordance with the statements hereinbefore referred to," but that on proper notice to the bonding company "interchanges or substitutions among any of the employees may be made." Some such changes were made, but the building and loan company, of which plaintiffs are the trustees in liquidation, continued to maintain its complement of officers substantially as required by the laws of Ohio until the discovery of the defalcation of its secretary, Jacob A. Blodt. Meanwhile, however, the other officers largely delegated their duties to said Blodt, giving him charge of the company's bank deposits and providing him with checks signed and countersigned in blank for him to issue as might be required. And the secretary of his own motion changed the company's deposit accounts from the single depository designated by the board of directors and placed them in other banks of his own selection. All this was in direct violation of the statutes of Ohio, Section 3836-4, of the company's by-laws, and of the statements and promises contained in the bond and the application therefor, with regard to the conduct of the company's business; and knowledge of such violation must necessarily be attributed to the company.

The company, however, failed to apprise the defendant of these very material facts, by means of which Blodt gained such complete control of the business as not only to be able to perpetrate successively through a long period of time the colossal frauds of which he was guilty but to cover the same up successfully and by cross-checks between the new depositories delude even the public accountant who annually audited the books. Blodt's employer had of course no actual knowledge of his defalcation, but it would inevitably have known of, or indeed have prevented, the same if it had not knowingly permitted its other officers systematically to neglect their respective duties. Nevertheless the president solemnly certified year after year to the bonding company, in order to obtain the annual renewals of said bond, that "each of the employees named in the accompanying list has faithfully and satisfactorily performed his duties and promptly and correctly rendered his accounts during the year" preceding. And solely upon the faith of this false certificate the renewals were duly issued.

It is undoubtedly true that bonding companies can not claim to occupy the favored position accorded by the common law to those who become private sureties without holding themselves out as engaged in the business of suretyship for profit. But such corporations are not out-laws, and the plainest principles of justice require that they shall not be held to liability to him who has by false and fraudulent representations induced them to enter into a suretyship contract.

It is apparent from what has already been said that it can make no difference in this case whether the statements in the president's certificates were representations that need only be true in substance and to the belief *bona fide* of the person making them, or warranties that must be true literally and at all events, irrespective of any bad faith. For the statements were materially and fundamentally untrue, and their untruth was necessarily known to the corporation if not to its president, since they related to the organization and general conduct of its own business.

The judgment is affirmed.